IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT KOHL,<br><br>                    Plaintiff,<br><br><br>vs.<br><br><br>CHRIS BURBANK, as an individual;<br>MELODY GRAY, as an individual; and<br>SALT LAKE CITY,<br><br>                    Defendants. | ORDER AND MEMORANDUM DECISION<br><br>GRANTING<br><br>MOTION TO DISMISS<br><br>SECOND CAUSE OF ACTION<br><br><br>Case No. 2:16-CV-865-TC |

Plaintiff Robert Kohl was a police officer with Defendant Salt Lake City Police

Department (Department).  After he was constructively discharged in 2010 (he resigned in lieu of

being fired), Mr. Kohl filed a claim under 42 U.S.C. § 1983.[1]  He contends that the Department,

as well as individual Defendants Chris Burbank (Chief of Police at the time) and Lieutenant

Melody Gray, retaliated against him because he exercised his First Amendment right to freely

associate with the Fraternal Order of Police (FOP).

The Defendants, who assert that Mr. Kohl left the Department because he lied during an

internal affairs investigation, have a filed a partial motion to dismiss the § 1983 claim.

According to their motion, Mr. Kohl's Amended Complaint fails to state a claim for relief under

---

[1]Mr. Kohl also filed a claim under the Americans with Disabilities Act (ADA) (he has dyslexia, dysgraphia, and other communication-based disabilities that made it difficult for him to write clear incident reports).  But the ADA claim is not before the court at this time.

Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the court GRANTS the Defendants' partial motion to dismiss.

## FACTUAL ALLEGATIONS[2]

Robert Kohl began working as a police officer for the Salt Lake City Police Department in 2001.  During that time, he was a member of the Salt Lake Police Association (SLPA), the employee union that has a collective bargaining agreement with Salt Lake City.  He was also a member of the Fraternal Order of Police (FOP) union, which does not have a collective bargaining agreement with the City.  Mr. Kohl alleges that the Department was aware of Mr. Kohl's affiliation with the FOP, but he does not expressly allege that either Lieutenant Gray or Chief Burbank were aware of his membership.

On December 12, 2010, he resigned from his job.  According to Mr. Kohl, his constructive discharge was the result of the Department's retaliation against him for his association with the FOP.  Mr. Kohl does not specify actions he took or statements he made as a member of the FOP.  The court gathers from the allegations in his Amended Complaint that his protected activity was joining the union.

**Department Policies Regarding FOP and its Members**

Mr. Kohl alleges that the Department and Chief Burbank "implemented and executed policies, customs, and practices that unconstitutionally discriminated against members of the

---

[2]For purposes of this order on the Defendants' motion to dismiss under Rule 12(b)(6), the court must treat all of the well-pleaded factual allegations in Mr. Kohl's Amended Complaint (Docket No. 11) as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

FOP."  (Am. Compl. ¶ 74 (Docket No. 11).)  Lieutenant Gray "helped [Chief Burbank] implement [those] policies, customs, and practices . . . ."  (Id. ¶ 81.)

The unfair treatment of the FOP as an <u>entity</u> included denial of "equal access to avenues of communication, including equal access to recruits" and "the ability to post information on the Department's bulletin board."  (Id. ¶ 11.)  According to Mr. Kohl, the Department mistreated FOP <u>members</u> by enacting "a policy where FOP members would have lower priority in achieving promotions . . . [and] were targeted for termination," and requiring that a Department attorney be present for all Internal Affairs (IA) investigations of FOP members but not IA investigations of non-FOP members.  (Id. ¶¶ 78–79.)  Finally, he asserts that the Department, as well as Chief Burbank and Lieutenant Gray, "issued significantly harsher discipline against FOP members than non-FOP members for similar malfeasances."  (Id. ¶ 14.)  Mr. Kohl does not identify employees who received disparate levels of discipline and does not describe the "malfeasances" that occurred.  He does not identify any discipline that  Chief Burbank personally imposed on Mr. Kohl.

**Mr. Kohl's Learning Disability and "Papering"**

Mr. Kohl has a learning disability "involving dyslexia, dysgraphia, and other communication-based disabilities that ma[k]e it difficult for [him] to write proficiently."  (Id. ¶ 15.)  The Department was aware of his disability.  "Despite knowledge of his documented disability, the Department, and specifically, [Lieutenant] Gray, . . . disciplined him for his report writing."  (Id. ¶ 16.)  According to Mr. Kohl, "[o]thers in the Department did not receive the same level of scrutiny and/or discipline as [he did] in regards to report writing." (Id. ¶ 17.)

Mr. Kohl alleges that Lieutenant Gray "began the process of 'papering'" him.  (Id. ¶ 82.)

"'Papering' is where a supervising officer begins documenting a series of complaints regarding a supervised officer['s] conduct to use as support for the supervised officer's eventual termination."  (Id. ¶ 83.)  According to Mr. Kohl, the complaints against Mr. Kohl "had no basis in fact." (Id. ¶ 84.)  He does not describe the complaints, who made the complaints, the alleged inadequacies, or the falsity of the accusations, and he does not allege that Lieutenant Gray knew or had reason to know that the complaints were unfounded.  Moreover, it is not clear that the complaints were based on his report-writing inadequacies.

Mr. Kohl complained to Chief Burbank that Lieutenant Gray was harassing him with the ongoing "papering."  Chief Burbank told Mr. Kohl that he was aware of that harassment and that he would investigate Lieutenant Gray's actions.  But Chief Burbank never conducted that investigation.

After Mr. Kohl was increasingly disciplined for writing incident reports that his supervisor Lieutenant Gray deemed inadequate, he "attempted to provide his supervisors with documentation of his learning disability."  (Id. ¶ 18.)  He was warned that "if he formally submitted documentation of his learning disability his employment with the Department would be immediately terminated."  (Id. ¶ 19.)  Then, in 2010 when he did submit the documentation, he "was accused of making excuses for his report writing." (Id. ¶ 20.)  He does not identify either the person who made the threat or the person who made the accusation.

**The Internal Affairs Investigation and Kohl's Resignation**

In 2010, the Department investigated Mr. Kohl for allegedly using excessive force during

4

an arrest.[3]  During the IA review of the excessive force allegation, the Department interviewed him and ultimately accused him of lying because "his verbal rendition of events was inconsistent with his written version."  (Id. ¶ 23.)  Mr. Kohl told the Department that "any inconsistencies were due to his learning disability and the fact that he was not reasonably accommodated with additional time to provide a supplemental report" about the incident leading to the excessive force allegation.  (Id. ¶ 24.)

After he was accused of lying in his report, he spoke to the SLPA union representative Andy Leonard, who said "he had been in contact with [SLPA President] Gallegos, Findlay[[4]], and [Chief] Burbank, and that the only way for Kohl to keep his job was to claim that he misrepresented facts concerning the . . . arrest."  (Id. ¶ 26.)  SLPA President Gallegos also advised him that "he had to lie in order to keep his job."  (Id. ¶ 27.)  Mr. Kohl alleges "on information and belief" that the Department condoned the advice he received from the two union representatives.[5]  (See id. ¶ 30.)  Based on that advice, "and under pressure of losing his job because his disability resulted in a poorly written report, Kohl claimed that his report was incorrect and untruthful" during an IA hearing.  (Id. ¶ 29.)

After Mr. Kohl said he lied in his written report, Lieutenant Gray told Sergeant Ammott[6] that the Department was going to fire Mr. Kohl.  Sergeant Ammott passed that information along

---

[3]The details about the arrest are not included in the complaint.

[4]The complaint does not state the full name or title of "Findlay."

[5]He does not allege that the union representatives were acting as agents of the Department or that they conspired with the Department to pressure Mr. Kohl to lie so the Department would have a reason to fire Mr. Kohl.

[6]The complaint does not state Sergeant Ammott's full name.

to Mr. Kohl, who then contacted SLPA President Gallegos who "assured Kohl that he would be transferred to the East Side and that Gallegos was in direct contact with [Chief] Burbank and other deputy chiefs regarding Kohl's situation." (Id. ¶ 33.)

But on December 12, 2010, the Department, citing Mr. Kohl's lie, gave Mr. Kohl the option of resigning or being discharged. Mr. Kohl chose to resign.

**POST Investigation**

In the meantime, the Department sent Mr. Kohl's IA file to the Peace Officer Standards and Training (POST) academy.[7] In August 2011, eight months after Mr. Kohl resigned, POST "exonerated him." (Id. ¶ 40.) Despite learning about the POST decision, the Department "declined to reinstate Kohl despite knowledge that Kohl did not lie under Garrity[[8]] as determined by the POST investigation that Kohl had a documented disability that was not accommodated." (Id. ¶ 41.)

**Issuance of the "BOLO"**

At some point after Mr. Kohl resigned, the Department issued a "BOLO" ("Be on the look-out") bulletin to law enforcement officers suggesting that Mr. Kohl was dangerous and perhaps suicidal. According to Mr. Kohl, the negligently-issued BOLO was unfounded and caused other law enforcement agencies to view him with suspicion. He alleges that the

---

[7]Law enforcement officers in Utah must satisfy POST certification requirements before serving in a law enforcement agency.

[8]See Garrity v. State of New Jersey, 385 U.S. 493 (1967). State and local investigators use the Garrity warning to advise employees who may be the subject of an internal investigation. Under that warning, the investigator advises the employee of potential criminal and administrative liability for statements he makes and advises him of his right to remain silent on issues that may implicate him in a crime.

Department issued the BOLO "to dissuade all law enforcement agencies in Utah from hiring Kohl." (Id. ¶ 87.)

## ANALYSIS

The Defendants ask the court to dismiss the Amended Complaint under Rule 12(b)(6) because (1) Mr. Kohl's membership in the FOP is not a matter of public concern (an element of a First Amendment retaliation claim); (2) he has not satisfactorily alleged that his membership in the FOP was the "substantial motivating factor" underlying his discharge (another element of the claim); (3) his vague allegations fail to tie the actions of Lieutenant Gray and Chief Burbank to his FOP membership and so fail to establish a discriminatory motive; and (4) his claim against the Department consists of nothing more than conclusory allegations about a policy targeting the FOP and its members, and, consequently, he has not stated a claim against the Department for municipal liability under § 1983.

### Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss all or a portion of a complaint if it fails to state a claim upon which relief can be granted. The court, during its review, must view the complaint in a light most favorable to the plaintiff. Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain well-pleaded factual allegations that, if true, state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under

Twombly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 663 (quoting Twombly, 550 U.S. at 555).  In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, the court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).

**First Amendment Retaliation Claim**

To prevail on a claim of retaliation for exercise of a First Amendment right—in this case, freedom of association with a labor union[9]—an employee must establish three elements: (1) the protected activity involved a matter of public concern; (2) the employee's interest in taking the protected action outweighed the employer's interest in regulating the action; and (3) the protected activity was a "substantial motivating factor" in the employer's decision to take the adverse action against the employee.  Cillo v. City of Greenwood Village, 739 F.3d 451, 461 (10th Cir. 2013) (citing Maestas v. Segura, 416 F.3d 1182, 1187 (10th Cir. 2005)).  To satisfy the "substantial motivating factor" prong of the test, the employee "must show the protected speech played a substantial part in the employer's decision to adversely alter the employee's conditions

---

[9]"The First Amendment protects the right of a public employee to join and participate in a labor union."  Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1438 (10th Cir. 1990) (citing Smith v. Ark. State Highway Emp., 441 U.S. 463, 465 (1979)).

of employment." <u>Maestas</u>, 416 F.3d at 1188 (emphasis in original).  But if the employer establishes that it would have taken the same action against the employee in the absence of the protected activity, the employee cannot recover.  <u>Id.</u> at 1187.

Undermining Mr. Kohl's allegations is the Department's proffered reason for his discharge: that he lied during a formal investigation, something he expressly admits in his complaint.  Given that admission, the court finds that Mr. Kohl has not sufficiently alleged that his membership in the FOP was the substantial motivating factor in the Department's decision to terminate his employment or that any allegedly discriminatory policy was the cause of his termination.[10]  Accordingly, he has not stated a claim for deprivation of a constitutional right.

In addition, Mr. Kohl has not pleaded facts that adequately allege personal involvement by Lieutenant Gray or Chief Burbank in any alleged deprivation of his First Amendment right to freedom of association.  Accordingly, he fails to state a claim against Lieutenant Gray and Chief Burbank for individual liability under § 1983.

**<u>Municipal Liability</u>**

To establish municipal liability under § 1983, a plaintiff must show "'1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged.'"  <u>Mocek v. City of Albuquerque</u>, 813 F.3d 912, 933 (10th Cir. 2015) (quoting

---

[10]The Defendants also assert that Mr. Kohl's membership in the FOP was not a matter of public concern because FOP does not have a collective bargaining agreement with the City. Tenth Circuit law is not clear on this issue.  <u>See Cillo v. City of Greenwood Village</u>, 739 F.3d 451, 461 n.17 (10th Cir. 2013) ("It is not clear whether the first factor [requiring that the protected activity involve a matter of public concern] applies to retaliation claims involving union association, particularly where there is not a collective bargaining agreement in place."). Because Mr. Kohl's complaint is deficient in other respects, the court will not address the "public concern" question.

Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006)).  Here, Mr. Kohl alleges that the

Department (through Chief Burbank[11]) had a policy of mistreating the FOP and its members,

including him.[12]

According to Mr. Kohl, Chief Burbank "implemented and executed policies, customs,

and practices that unconstitutionally discriminated against members of the FOP" by "delaying the

FOP members' enactment of automatic payroll deductions for union dues," denying "the FOP

equal access to police recruits," denying "the FOP access to a public bulletin board," enacting "a

policy where certain FOP members where [*sic*] targeted for termination," all with the goal "to

dissuade individuals from associating with the FOP."  (Am. Compl. ¶¶ 74–80.)  These show

resistance to the FOP and its members, but they do not directly address Mr. Kohl's situation.

Assuming he has sufficiently stated the existence of a policy, the court finds that he has

not alleged a direct causal link between that policy and his constructive discharge.  Mr. Kohl

admits in his complaint that he lied during the IA investigation.  His motivation for lying (the

advice from union representatives, allegedly condoned by the Department, and fear of losing his

job) does not change that fact.  His decision to lie was an intervening cause that undermines a

---

[11]The court assumes, without deciding, that Chief Burbank, as Chief of the SLCPD, was
an authorized decisionmaker for the City whose decisions concerning Mr. Kohl could potentially
bind the City under § 1983.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986)
("If the decision to adopt [a] particular course of action is properly made by [the municipality's]
authorized decisionmaker[], it surely represents an act of official government 'policy' as that
term is commonly understood" and "may give rise to municipal liability under § 1983").

[12]Defendants point out that the City has an ordinance setting forth the following official
non-discrimination policy: "[N]o employee shall be discriminated against because of affiliation
or membership with any labor union, nor shall any employee be compelled, coerced or
intimidated to join or refrain from joining any such organization."  Salt Lake City, Utah, City
Code § 2.52.080 (2016).  But the Defendants do not clarify whether that policy was in effect in
2010, so the court will not address the impact, if any, it would have in Mr. Kohl's case.

conclusion that his FOP membership was a substantial motivating factor in the Department's decision to constructively discharge him.  See Maestas, 416 F.3d at 1189 ("[E]vidence of intervening events tend[s] to undermine any inference of retaliatory motive and weaken[s] the causal link.").  For that reason, Mr. Kohl has not alleged municipal liability under § 1983.

**Individual Defendants**

To be liable under § 1983, an individual defendant must have personally participated in the violation.  Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).  To survive a motion to dismiss, the plaintiff's complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).  Mr. Kohl's frequent use of the words "Department" and "Defendants" is not sufficient to allege specific actions of individual Defendants Gray and Burbank.  See Pahls v. Thomas, 718 F.3d 1210, 1225–26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice.  Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights.").

1.    **Melody Gray**

The Amended Complaint does not contain sufficient allegations linking Lieutenant Gray's actions to Mr. Kohl's constructive discharge.  His statement that she "helped" to implement discriminatory policies established by Chief Burbank is too conclusory.  And the few specific allegations left in his complaint do not link her actions to Mr. Kohl's FOP membership

11

or his discharge.

To start, he does not allege that Lieutenant Gray was aware of his FOP membership.[13] But even if he did make that allegation, a reader of the complaint cannot reasonably conclude that Lieutenant Gray personally participated in his constructive discharge, much less that she did so because of his FOP membership.

He claims that she unfairly harassed him about his written reports even though she knew of his disability. He alleges that she "papered" him to memorialize unfounded complaints. He does not provide any specifics about the complaints, why he believes they were unfounded, or that she knew they were unfounded. And he does not allege that he was terminated based on inadequate written reports or a progressive discipline policy triggered by a series of unfounded complaints in his file. Indeed, as reason for his termination, the Department cites his decision to lie during an IA investigation.

The allegation that Lieutenant Gray referred him for investigation does not change the court's conclusion. There are no allegations that instigation of the investigation (which began with a charge of excessive force) was unwarranted. And the court cannot ignore the fact that he chose to lie during the investigation.

He does not allege that Lieutenant Gray had authority to fire him, or that she was involved in the decision to fire him. The only possible link is her statement to Sergeant Stafford that Kohl was going to be fired for lying. But that neutral statement that does not establish that she participated in his discharge, much less that she had a discriminatory motive.

---

[13]His allegation that the Department was aware of his membership "at all relevant times" (Am. Compl. ¶ 9), does not extend to Lieutenant Gray.

In short, the specific allegations, in combination, do not plausibly link her to the alleged constitutional injury.

**2.      Chris Burbank**

Mr. Kohl may state a claim against Chief Burbank, who was a supervisor, in a couple of ways.  Of course he can allege that Chief Burbank personally and directly committed the violation against Mr. Kohl.  But he may also allege that Chief Burbank, as a supervisor, "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." Jenkins, 81 F.3d at 994–95 (internal citations and quotation marks omitted).

The court initially notes that Mr. Kohl's allegation that the Department was aware of his FOP membership "at all relevant times" (Am. Compl. ¶ 9) does not extend to Chief Burbank as an individual.  But even if the court imputes the Department's knowledge to Chief Burbank, the remaining allegations are too sparse to find him individually liable.

An allegation that Chief Burbank, who was a supervisor, "was in charge of other state actors who actually committed the violation" is not sufficient to state a claim against the supervisor as an individual.  Jenkins, 81 F.3d at 994.  "Instead, just as with any individual defendant, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." Id. at 994–95 (internal citation and quotation marks omitted). Mr. Kohl generally alleges that Chief Burbank "was aware of the discrimination, harassment, and unfair treatment directed at Kohl and refused to investigate or remedy the misconduct."  (Am. Compl. ¶ 65.)  The court reads that allegation to refer to Lieutenant Gray's continued "papering" and discipline for report writing.  Chief Burbank admitted to Mr. Kohl that he was aware of Lieutenant Gray's "consistent harassment" of Mr. Kohl regarding Mr. Kohl's written reports, and

despite saying that he "would personally conduct an investigation of Gray," he did not conduct that investigation.  (See id. ¶¶ 34–36.)  Failing to conduct an investigation into Lieutenant Gray's "harassment" of Mr. Kohl was not acquiescence in a constitutional violation.  As noted above, the harassment allegations against Lieutenant Gray do not allege a constitutional violation.

In addition, Mr. Kohl asserts that Chief Burbank "constructively terminated" him.  (Id. ¶ 36.)  Not only is that statement too conclusory under the pleading rules, but the facts alleged in the complaint actually support the conclusion that his lie during the investigation, rather than his FOP membership, was the substantial motivating force behind that decision.

Finally, Mr. Kohl contends that "Chief Burbank participated in the issuance of a BOLO against Kohl."  (Id. ¶ 86.)  He characterizes the BOLO as "erroneous" (id. ¶ 47), but Mr. Kohl does not allege that anyone involved with its issuance (including Chief Burbank) knew, or should have known, that the information was incorrect.  In fact, he contradictorily alleges that its issuance was "negligent."  (Id.)  In short, the BOLO does not add to Mr. Kohl's claim of retaliation.

The non-conclusory allegations against Chief Burbank are not enough to find him personally liable under § 1983.

## **ORDER**

Mr. Kohl's allegations do not allow the court to draw a reasonable inference that any of the Defendants are liable for the misconduct alleged.  Accordingly, the Defendants' motion to partially dismiss Mr. Kohl's complaint (Docket No. 13) is GRANTED, and Mr. Kohl's second cause of action asserting a claim under 42 U.S.C. § 1983 is hereby DISMISSED WITH

PREJUDICE.[14]

SO ORDERED this 7th day of March, 2017.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

---

[14]Mr. Kohl briefly remarks in his opposition that if the court finds the allegations lacking, he should be allowed to file an amended complaint. (See Opp'n at 3–4.) Given the procedural posture and stage of this case, the court declines to do so.

First, Mr. Kohl has had a series of opportunities to amend his allegations. He initially filed his claim with two other plaintiffs in 2012. (See Hollenbach v. Burbank, Case No. 2:12-cv-608-TS-BSW (D. Utah).) On May 9, 2016, the court severed Mr. Kohl's second amended complaint. (See Hollenbach, Mot. Sever, Docket No. 106; May 9, 2016 Order, Docket No. 111.) After his case was severed, Mr. Kohl re-filed his complaint in this case and, after the Defendants filed an earlier motion to dismiss raising the same issues, he amended it to stave off dismissal. (See Aug. 8, 2016 Compl., Docket No. 2; Oct. 13, 2016 Mot. Dismiss, Docket No. 5; October 27, 2016 Am. Compl., Docket No. 11.) When the Defendants filed their second motion to dismiss (the one now before the court), he had an opportunity to respond with a substantive motion for leave to amend and produce a proposed amended complaint. He did not do so. Instead, he embeds a brief request to amend in his opposition. (See Opp'n at 3–4.)

Second, the parties completed fact discovery on the § 1983 claim on March 24, 2016. (See Mot. Dismiss at 4 (citing Atty Planning Mtg. Rep. at p. 3, Docket No. 40 in Hollenbach).) Discovery no doubt illuminated the allegations in his complaint. But he did not take advantage of that situation and chose to rest his case on the allegations already filed with the court.

For the foregoing reasons, leave to amend is not an appropriate remedy now.